HAMILTON COUNTY, APPELLEE, V. AURORA NATIONAL BANK,
APPELLANT.

FILED JANUARY 9, 1911.   No. 16,609.

1. **Counties: DEPOSITS OF PUBLIC MONEYS.** The purpose of article III,
   ch. 18, Comp. St. 1903, commonly called the "depository law," was
   to provide a place for the safe-keeping of public money; to obtain
   interest thereon where it was possible to do so, and to relieve
   state and country treasurers from liability as insurers of so much
   of the public money as should be placed in depository banks.

2. ———: ———: **INTEREST.** The treasurer of H. county purchased,
   with county funds which he was unable to place in depository
   banks, with the approval and authority of the county board, and
   for the sole purpose of obtaining a safe place in which to keep
   the public money, noninterest-bearing demand certificates of a
   bank which in good faith had refused to qualify as a depository
   under the provisions of article III, ch. 18, Comp. St. 1903. The
   certificates were treated and used as cash by the treasurer in
   transacting the county business and were paid in full on demand.
   Neither the treasurer nor the bank in any manner profited by the
   transaction. *Held*, That the bank was not liable to the county for
   interest upon the public money with which the certificates were
   purchased.

APPEAL from the district court for Hamilton county:
HARRY S. DUNGAN, JUDGE.   *Reversed.*

*Hainer & Smith* and *C. P. Craft*, for appellant.

*A. M. Post, Albert & Wagner* and *J. A. Whitmore*, contra.

FAWCETT, J.

Action by Hamilton county against the Aurora National Bank to recover interest on public funds placed by the county treasurer in the Aurora State Bank for safe keeping. The plaintiff had judgment, and the defendant has appealed.

The record discloses the following undisputed facts: That one J. B. Cunningham took office as treasurer of Hamilton county in January, 1902, and served four years; that he was succeeded by one George Wanek, who was still in office when this action was tried; that the defendant bank is the successor of the Aurora State Bank, with which the transactions on which the plaintiff bases its right of action were had; that during the incumbency of the above named treasurers the county had on hand a sum of money largely in excess of the amount for which it could obtain county depositories under the provisions of article III, ch. 18, Comp. St. 1903; that it was agreed upon the trial, and is now conceded, that the county's safe and vault were manifestly unsafe for the keeping of large sums of money; that the treasurer and the county board used their utmost endeavors to secure depository banks which would take all of the county funds and pay interest thereon according to the terms of the depository law; that they succeeded in securing some depositories, but not a sufficient number having the necessary financial strength to take all of said funds, and there was thus left a large amount of public money in the hands of the county treasurer to be otherwise kept and cared for; that after the efforts of the county treasurer and the county board to secure depository banks, not only in Hamilton county, but in adjoining counties, sufficient in amount and finan-

cial strength to take the surplus fund, had failed, the county treasurer from time to time deposited such funds, in his own name, in the Aurora State Bank, which had not complied with the depository law, taking therefor noninterest-bearing demand certificates of deposit, which he immediately indorsed to himself as county treasurer, and deposited in the county vault for safe-keeping; that this was all done with the full knowledge of the county board, and these certificates were in all respects used and treated by the treasurer and the county board as cash, in the transaction of the business of the treasurer's office, and were so treated in the settlements made, as provided by law, between the treasurer and the county board; that no money was taken from any depository bank and put into demand certificates, but, on the contrary, the depository banks were at all times furnished with all the money they could take under the law, and only the excess or surplus funds were held in the demand certificates above described; that no profit or interest was realized by either the county, the treasurer, or the bank, directly or indirectly, from these transactions; that the certificates were all paid in full on demand, and on the 1st day of January, 1908, the county had withdrawn from the Aurora State Bank all of its public money so deposited, and the bank did not owe the county anything, unless it was liable for interest on the transactions above described; that the treasurer and the county board acted in good faith in the transactions above described, for the sole purpose of safe-guarding the county funds; that none of the transactions complained of was had with the defendant, the Aurora National Bank, which was organized as the successor of the Aurora State Bank some two months after the county had withdrawn all of its funds from said last-named bank and surrendered all of such certificates of deposit to the bank for cancelation.

The only disputed question involved in this controversy, as shown by the record, is the contention made by the plaintiff that there was an agreement or conspiracy be-

tween some of the banks of Hamilton county, including the Aurora State Bank, not to qualify as depositories, and thus obtain the use of the county money without the payment of interest. Upon this point we have carefully examined the record and are of the opinion that the plaintiff failed to show any such conspiracy or agreement. The only evidence in support of this claim is the testimony of two witnesses, who stated, in substance, that at a meeting of a part of the officers of some of the banks doing business in Hamilton county they heard the president of the Aurora State Bank say that the banks were foolish to give bonds, because they would obtain the money anyway, and would not have to pay any interest on it. On cross-examination, however, the witnesses were unable to state whether this occurred at or near the beginning of Mr. Cunningham's term of office, or some two years prior thereto, at a time when the banks had under consideration the question of signing the official bond of one Hammond, who was Cunningham's predecessor in office. That these statements were made at the earlier date is shown by the president of the Aurora State Bank, who testified that the only meeting at which any such statements could have occurred was held at the beginning of Hammond's term of office, when the question under consideration was whether or not the banks of Hamilton county would sign the treasurer's official bond. When we consider the testimony upon this point with all of the other evidence in the case, and in the light of the established fact that the banks, doing business at Aurora during the official incumbency of Treasurer Cunningham, had more money of their own than they could profitably loan or invest, that the Aurora State Bank refused to take the money in question if required to pay interest thereon, we are of the opinion that this contention must fail.

It follows that, if any authority exists by which the judgment of the district court can be sustained, it is found in the provisions of section 18, art. III, ch. 18, Comp. St. 1903, which then read as follows: "The county

treasurer of each and every county of the state of Nebraska shall deposit, and at all times keep on deposit for safe-keeping, in the state, national or private banks doing business in the county, and of approved and responsible standing, the amount of moneys in his hands collected and held by him as such county treasurer. Any such bank located in the county may apply for the privilege of keeping such moneys upon the following conditions: All such deposits shall be subject to payment when demanded by the county treasurer on his check, and by all banks receiving and holding such deposits, interest shall be paid amounting to not less than two (2) per cent. per annum, upon the amount so deposited, as hereinafter provided, and subject also to such regulations as are imposed by law, and the rules adopted by the county treasurer for holding and receiving such deposits. It shall be the duty of the county board to act on such application, or applications of any and all banks, state, national or private, as may ask for the privilege of becoming the depository of such moneys, as well as to approve the bonds of those selected incident to such relation, and the county treasurer shall not deposit such money or any part thereof, in any bank or banks, other than such as may have been so selected by the county board for such purposes, if any such bank or banks have been so selected by the county board, and on all deposits he may make in any bank whatsoever, interest shall be paid at a rate not less than two (2) per cent. per annum; and where more than one bank may have been so selected by the county board for such purpose, he shall not give a preference, to any one or more of them, in the money he may so deposit, but shall keep deposited with each of said banks, such a part of said moneys, as the capital stock of such bank is a part of the amount of all the capital stock of all the banks so selected, so that such moneys may at all times be deposited with said banks *pro rata*, as to their capital stock."

Counsel for plaintiff strenuously contend that the

clause, "and on all deposits he may make in any bank whatsoever, interest shall be paid at a rate not less than two (2) per cent. per annum," renders the defendant absolutely liable for the interest sought to be recovered in this action. It is argued that it was contemplated by the legislature, when it passed the depository law, that the state and county treasurers, notwithstanding its provisions, would deposit the public funds in banks other than designated depositories, and for that reason inserted therein the clause last above quoted. We are of the opinion that this argument is unsound. To so hold would be to convict the legislature, when passing a law for the relief of treasurers which would enable them to avoid liability for public funds by depositing them in accordance with such law, of believing that they, the treasurers, would deliberately violate the law and thereby lay themselves liable to criminal prosecution. No such thought, in our judgment, was in the minds of the legislature when the act under consideration was passed. On the contrary, we think that the purpose of the act was to provide a place for the safe-keeping of the public money; to obtain interest thereon where it was possible to do so, and to relieve the treasurer from liability as an insurer of so much of the fund as should be placed in depository banks. If the bank, during the time referred to, had more money of its own than it could profitably use, there was no incentive for it to enter into any unlawful combination to obtain the county funds, the obtaining of which, to lie idle in its vaults, would simply impose upon it increased labor and added responsibility. It is immaterial that, while this money was being from time to time deposited, the officers of the bank obtained the knowledge that the treasurer was holding and using the certificates as county funds. Nor do we think that the fact that the money was so deposited should, in the light of the other facts shown, be regarded as evidence of any trick or attempt to deceive on the part of either the bank or the treasurer. It is as if the bank had said to the treasurer, "We will not have

any dealings with you as treasurer, but if you want us to act as custodian, for *you*, of the county money, for which you are personally responsible, which you have not been able to deposit in depository banks and for the safe-keeping of which the county has failed to provide you a safe place, we will accommodate you, but we will only deal with you as an individual, and not as treasurer." The depositing of the money in the bank by the treasurer, as was done, did not relieve him or his bondsmen of any liability whatever: If the bank had failed while it- held such deposits, the treasurer and his bondsmen would have had to make the loss good to the county. The treasurer was in a most unfortunate situation. If he had not been able to make some such arrangement as was made with the bank, he would have been compelled to either resign his office or to run a risk of loss by robbery, which we do not think he could have induced any bondsmen to assume. This case impresses us as one of absolute fair dealing between the bank and the county treasurer. The bank had no use for the money and did not want it. The treasurer was afraid to keep it in the county vaults. As a personal accommodation to him, the bank acted as his custodian for its safe-keeping, and we do not think it thereby became any more liable for interest upon the deposit than would a safety deposit vault company if it had rented the treasurer space in its vaults for the custody of county funds. Furthermore, this action of the bank and county treasurer was fully approved and ratified by the county board. They realized the situation as fully as did the bank and the treasurer. The deposit was not made by the treasurer and accepted by the bank clandestinely, but was done openly and with the full knowledge, acquiescence and approval of the county board.

In *State v. Hill*, 47 Neb. 456, in paragraphs 16 and 17 of the syllabus by Post, C. J., we held: "(16) A state treasurer who on taking charge of the office, instead of demanding the funds due from his predecessor in cash, accepts

in payment thereof certificates of deposit issued by a bank in which such funds have been deposited for safe-keeping, is chargeable upon his bond for the amount of such payment, and his liability therefor is not affected by the fact that he is unable to realize the money upon such certificates by reason of the subsequent failure of said bank.

"(17) Such a transaction, if in good faith by both parties, amounts to a settlement within the meaning of the statute, which will, to the extent of the payment so made, relieve the retiring treasurer, since the state is not entitled to concurrent remedies upon the bonds of successive officers to enforce the same liability, and whatever is in such case sufficient in law to charge the incumbent will operate *per se* to discharge his predeccessor."

We think the rule there announced is applicable here. Under that rule the deposit by Mr. Cunningham of the money in the bank for safe-keeping upon certificates of deposit issued by the bank did not affect his liability nor that of his bondsmen upon his treasurer's bond. Even if so depositing the money were contrary to law, which we do not decide, such act could be ratified by the county, and if such transaction were in good faith on the part of both himself and the county board fully adjusted and a settlement between them had, and the money so deposited all received by the county, such settlement, under the above rule, absolutely relieved Mr. Cunningham from all liability to the county for such transaction, and we have so held in *Hamilton County v. Cunningham*, 87 Neb. 650. This being true, then by parity of reasoning the bank, by its prompt payment of the funds on demand, was also relieved of all liability. If this transaction of depositing the money in the bank by Cunningham was in violation of law, as claimed, both Cunningham and the bank were parties to such violation, and would be equally liable therefor; and if the transaction, being in perfect good faith, were such that by its ultimate result either of the parties thereto was released, we see no escape from holding that both were released.

We think it must be conceded that the bank cannot, under the evidence before us, be held liable for interest, unless clearly made so by the act above set out; and to our minds the legislative intent in the enactment of the clause over which the contention in this case has arisen is far from being clear. Inconsistent expressions may be found in the statutes regarding the duty of the county treasurer in keeping the money of the county. It is impossible to construe literally all of the language used by the legislature. It is unnecessary to decide in this case whether section 21 of the act should be construed to forbid the deposit of money in banks not selected by the county board as depositories when there are no regularly selected depositories in which the treasurer can deposit the county funds, nor is it necessary to determine the proper construction of the first clause of section 18 of the act, or the effect of the amendment of that section by the act of 1903, which forbids depositing money in other banks when there are depository banks in which the money can be kept. As we view the act, the whole intent and purpose of the section and following sections appear to be that of securing the county funds by depositing them in banks which have qualified by giving the regular security. Section 18 prescribes a particular class of banks in which such deposits should be made. Section 21 renders it criminal to profit by depositing elsewhere. Construed consistently with other statutes on the same subject, the sentence in section 18, "and on all deposits he may make in any bank whatsoever, interest shall be paid," appears to have reference to depository banks, and it would seem that it was not the purpose of the legislature to so radically change the true subject of the section and sentence as to encourage deposits in violation of law to the extent of providing for the payment of interest on such deposits. It would be an anomaly to declare a particular act criminal and at the same time anticipate the violation of the law by the performance of that act.

The judgment of the district court is reversed and the case remanded for further proceedings.

REVERSED.

ROSE, J., not sitting.

BARNES, J., dissenting.

I am unable to concur in the majority opinion, and briefly state some of the reasons for my dissent. In construing statutes the court should take account of the conditions existing prior to their enactment, the mischief sought to be prevented thereby, and the means adopted to accomplish that purpose. To that end courts are required to make use of the knowledge common to all persons of such existing conditions. It is a well-known fact that for many years prior to the enactment of our depository law, in its original form, it had been the universal custom of our state and county treasurers to deposit the public moneys in such banks as would pay them the highest rate of interest thereon, to convert this interest to their own use, and thus increase their salaries and fees beyond the compensation allowed them by law. This practice had, in many instances, resulted in loss of the public funds, and many unsuccessful suits had been instituted to recover the interest thus converted to the use of such officers. It therefore seems clear that the legislative purpose in passing the depository act of 1901 was to provide a safe place for keeping the public money, to obtain interest thereon to the use and benefit of the public, and prevent the appropriation of such interest by the public officers. The effect of the original act was to immediately put a stop to the payment of interest to treasurers on public funds deposited in banks, and interest at the rate of 2 per cent. per annum was thereafter paid to the counties by depository banks. In the course of time it was ascertained, and it became a well-known fact, that many banks were practically annulling the provisions of the depository law by assisting in the election of county treasurers who were friendly to them, and by

22

then refusing to qualify as county depositories, under the provisions of that act, they were obtaining the use of public money without the payment of any interest whatsoever. When this course had been pursued to such an extent that it also became a matter of common knowledge, the legislature amended the depository law by the act of 1903, and inserted therein the clause that, on all deposits the treasurer may make in any bank whatsoever, interest shall be paid at the rate of 2 per cent. per annum. Construing the amendment in the light of the conditions above mentioned, which were then well known and understood, and which the courts should not refuse to recognize, we are of opinion that it was the intention of the legislature to make the amended act apply to transactions like those in the case at bar, and thus prevent the banks by the adoption of any scheme or device, and irrespective of any condition whatsoever, from obtaining the use of the public money without the payment of interest thereon. It will not do to say that the amendment in question was intended to apply alone to depository banks, for that matter was fully covered by the terms of the original act. It is conceded by the majority opinion that the officers of the defendant bank well knew that treasurer Cunningham was, as a matter of fact, by the purchase of the certificates in question, depositing the county money in their bank for safe-keeping. It is said that the bank had no use for this money, and obtained no benefit from such deposits. With this I cannot agree. The testimony discloses that the bank did not need the money for the purpose of extending its loans, and that is as far as the evidence goes. It must be conceded, however, that the deposit of this money, amounting at times to as much as $30,000, did benefit the bank. It swelled the amount of its available assets; it enabled it to increase the amount of its banking business; and was a benefit to its financial standing. It follows that it is no hardship for the bank to be required to pay interest at the rate of 2 per cent. per annum on the average daily balances of the funds so deposited

therein from and after April 3, 1903, at which time the amendment in question became operative. It may be suggested that the amendment of 1909 repealed the section of the depository law in which the clause in question is found. I am satisfied, however, after an examination of this matter, that the intention of the legislature was not to repeal that section, but to repeal another and different section of the depository law, and, where such intention is clear, it is the settled law of this state that the repeal will operate only upon the section which was intended to be repealed. We think, however, the suggestion is wholly immaterial, because if, as contended, the section containing 'the clause in question was repealed, such repeal did not destroy the causes of action which had accrued thereunder prior to the adoption of the amendment of 1909. Section 6971, Ann. St. 1909, provides: "Whenever a statute shall be repealed, such repeal shall in no manner affect pending actions founded thereon, nor causes of action not in suit that accrued prior to any such repeal, except as may be provided in such repealing statute." It seems to me that the majority opinion in effect nullifies the provisions of the depository law, and, if carried to its legitimate conclusion, will permit the continuance of those reprehensible practices which it was especially enacted to prevent.

I am of opinion that the defendant bank should be held liable for the payment of 2 per cent. annual interest on the daily balances of the public money of Hamilton county deposited therein from and after the adoption of the amendment of 1903; that the judgment of the district court should be reversed and the cause remanded to that court, with directions to take an account of the amount of interest thus due from the bank to the county and render a judgment accordingly.

ROOT, J., concurs in this dissenting opinion.