**CITY OF PARSONS v. FIDELITY & DEPOSIT CO.**

**SAME v. NATIONAL SURETY CO.**

District Court, D. Kansas, Third Division. November 20, 1928.

Nos. 763, 765.

L. E. Goodrich and Carl V. Rice, both of Parsons, Kan., and Douglas Hudson, of Ft. Scott, Kan., for plaintiff.

Miller, Winger & Reeder, of Kansas City, Mo., and Payné H. Ratner, of Parsons, Kan., for defendant in No. 763.

Henry L. Jost, of Kansas City, Mo., and Kimball & Osgood, of Parsons, Kan., for defendant in No. 765.

POLLOCK, District Judge. The above entitled and numbered cases arose out of the same set of facts, were heard before the same able referee, and are governed by the same principles of law. They are now before the court on exceptions taken by the plaintiff to the findings of fact and conclusions of law made by the referee, who took the evidence, saw the witnesses face to face, heard their testimony, and reported the facts of the cases. ■ In passing, it may be noted, if the reference in these cases, made on application of the plaintiff and consented to by defendants, is a reference under the statute law of this state, the findings of fact and conclusions of law made by the referee are conclusive in the case, for that no motion for a new trial, as is by the statute law of this state required, has been made and filed by the plaintiff in the cases. Section 60—2924, R. S. Kansas 1923, provides as follows:

"*Trial before referees; report.* A trial before referees is conducted in the same manner as a trial by the court. He may require the court stenographer, when not otherwise engaged, to attend, take and transcribe the testimony in the case. They have the same power to summon and enforce the attendance of witnesses, to administer all necessary oaths in the trial of the case, and to grant adjournments, as the court, upon such trial. They must state the facts found and the conclusions of law separately, and their decisions must be given and may be reviewed in like manner. The report of the referees upon the whole issue stands as the decision of the court, and judgment may be entered thereon in the same manner as if the action had been tried by the court. When the referee is to report the facts, the report has the effect of a special verdict."

Hence, if the reference made may be held to be one under the Code of this state, as no motion for a new trial was made or filed in the cases, there is no power in the court to hear or consider the exceptions taken to the report of the referee, or to do other than enter judgment as recommended in the report. However, should it be determined the reference in these cases was one under the common law, and is governed by the common-law rule with reference to references, and not by the statute law of this state, then it was the proper practice to take exceptions to the report of the referee, as has been done in these cases, and it is incumbent upon this court to rule the exceptions taken, and to declare the law of the cases in the judgment entered.

■ Assuming the power to hear the cases on exceptions taken, without so deciding, it may be said, in so far as the facts of the cases are concerned, there is but little dispute. The questions of law arising on the facts found by the referee, and those which must be deemed from the record to be conceded, are these: What liability does the surety on the bond of a city treasurer of a city of the first class, acting under the commission form of government, in this state, assume under the laws of this state in force when said obligation was entered into?

It is entirely clear the law under which such city official takes and holds his office, and what duties such official assumes in the accepting and holding his office, must be examined and determined in fixing the extent of his obligation in making his official bond as surety for his official acts. In the instant cases, one W. W. Cavanaugh was duly, as by the law provided, made city treasurer of the city of Parsons, this state, long before May 1, 1923, and held the office from May 1, 1923, to July 20, 1926, at which time, being a defaulter, he committed suicide. As such city treasurer he was by the law under which he was named required to give a bond. This he did, with the defendant in one of the cases as surety for a portion of this time, and the other defendant for the remainder of the term. The conditions of these statutory bonds so given are as follows:

"The conditions of this obligation are that whereas, the above bounden W. W. Cavanaugh was, on the 30th day of April, 1923, appointed to the office of city treasurer of Parsons, Kansas, in the county of Labette: Now, if the said W. W. Cavanaugh shall safely keep all moneys which may be collected or received by him, or which otherwise come into his hands by virtue of his office, and pay the same over to the proper person or authority, and shall honestly and faithfully discharge and perform all and singular his duties as city treasurer according to law, during his continuance in office, then this obligation shall be void; otherwise, to remain in full force and effect."

The law providing for the office of city treasurer in a city of the class of the plaintiff city, and governed as it is by a commission, prescribes the duties of the city treasurer of such cities, and the duties of the commission-

ers of the city to designate depositories of the public moneys of the city, and as to the bonds required of such depositories, etc., as follows:

"13—2107. *Bond, duties and salary of treasurer; deposit city funds; how money paid out; license fees.* The city treasurer shall give a good and sufficient surety company bond to the city, in such amount and in such form as may be required by the board of commissioners, in a sum of not less than fifty thousand dollars, and the cost of such bond, if any, shall be borne by such city; and said bond, before its acceptance, shall be approved by the mayor and commissioner of finance and revenue, and shall be conditioned for the faithful discharge of his duties, and that such treasurer shall safely keep all public moneys intrusted to his care, and save such city free and harmless from all loss caused by neglect of duty or malfeasance in office. Said board shall require the treasurer to give a new bond whenever, in their opinion, the existing bond is insufficient; and whenever such new bond is required he shall perform no official act until such bond shall be given and approved in the manner aforesaid. It shall be his duty to receive and keep all money belonging to said city, and to pay out the same on warrants drawn by the city clerk under the seal of such city, and signed by the mayor and countersigned by the auditor or city clerk, and not otherwise. All moneys belonging to such city and received by any officer or agent thereof, from collection, fines, or any other source whatsoever, shall be by him deposited with the city treasurer daily. For all moneys received the city treasurer shall give duplicate receipts in all cases, one to the party paying the said money into the treasury and one to the auditor or city clerk. All persons charged with the collection of any money under this act, or ordinance passed in pursuance thereof, shall promptly pay the same over to the treasurer, under such penalty as may be prescribed by ordinance, and shall forthwith hand the treasurer's receipt to the auditor or city clerk, who shall countersign the original receipt and retain the duplicate. The party paying shall then hold said original receipt. Said treasurer shall render a full and correct itemized statement of all receipts and payments to the board of commissioners at their first regular meeting in each month and at such other times as may be required by said board or the mayor or the commissioner of finance and revenue. The city treasurer shall make deposits daily of all such sums of money as shall be received by him from all sources of revenue whatsoever, to his credit as treasurer of such city, in one or more banks of such city, to be selected by said board of commissioners; and any such bank, before such deposit is made therein, shall be required to enter into a contract with the said board to pay such city not less than two per cent. interest per annum, which said interest shall be payable at the end of each month, and shall be based on the average daily balances for the month, and he shall report the amount collected in his monthly statement following such collection. The said bank shall also execute and deliver to such city a good and sufficient surety company bond, to be approved by said board of commissioners, conditioned that such bank will safely keep and account for and pay over said money promptly on the check or draft of said treasurer; and no funds shall be paid out by said treasurer except by check or draft upon such bank or banks, and all checks or drafts drawn by said treasurer on such bank or banks shall be countersigned by the auditor or city clerk, who shall keep an accurate record of each check or draft so countersigned by him. Said treasurer shall also keep a separate account of each fund, and shall credit each account with the funds received therefor and charge each account with the amount legally paid out therefrom; and no money shall be paid out of any one fund for any object or purpose other than that for which the fund was created. The city clerk shall issue no license until there is filed with him a receipt from the city treasurer, showing that the full amount of said license fee has been paid. The city treasurer shall perform such other duties as may be required of him by the board of commissioners. He shall receive a salary not exceeding one thousand two hundred dollars per annum." R. S. Kan. 1923.

Undoubtedly the Legislature of the state, for the better protection of the municipalities, also provided the form and manner of withdrawing the moneys by the city treasurer deposited in the depositories. In these cases the city treasurer, Cavanaugh, was also cashier of a banking institution in the city of Parsons, known and called the State Bank of Parsons. This bank and four others in the city were by the city commissioners duly designated depositories of the moneys placed on deposit by the city. It was the practice of the city treasurer, during the time involved, to first deposit the moneys by him received as city treasurer in the State Bank of Parsons, of which he was the cashier, and to then place in the other depositories of the city moneys collected by the city in their propor-

tionate shares of the city fund. The city commissioners failed and neglected to do their duty, by not requiring the banks made depositories of city moneys to execute bonds for the faithful performance of their duties as by the law above quoted provided.

It is stipulated by the parties the city treasurer had collected and deposited in the city depositories, as of April 30, 1923, and had on hand at that time in the depositories, $202,257.84, which he had deposited as city moneys. Between April 30, 1923, and July 10, 1926, the moneys collected by Cavanaugh as city treasurer was the sum of $1,327,425.36, said sums of money being the only sums of money collected by the treasurer for the use of the city; that out of the funds so deposited to the credit of W. W. Cavanaugh, city treasurer, in depository banks there were during said period of time, as shown by city treasurer's reports, disbursements aggregating the sum of $418,095.89; that on April 30, 1923, there was a difference between the balance reported by the city treasurer in his report of that date and the balance shown on the books of said depository banks to be in the account of Cavanaugh, city treasurer, the sum of $33,657.50, the city treasurer's report showing a balance greater than shown by said bank records in said sum.

During this time it is stipulated all moneys drawn from the depositories were drawn on checks or vouchers signed, not as the law requires, but by W. W. Cavanaugh, as city treasurer, alone. The question presented in these cases is: Who, under the law, is responsible for the shortage of money found in the depositories in which the funds were actually deposited by the city treasurer as by law required; that is, whether, under the law, the bonding companies, sureties on the official bonds of the city treasurer are liable?

It is worthy of note the city commissioners did not in the first place require of the banks designated as city depositories surety bonds for the safe-keeping of the funds of the city therein deposited and their repayment as the law requires. Again, it is worthy of note the sums of money actually withdrawn from the banks as depositories were not actually paid out on vouchers made by the city and its officials as by the law commanded. Again, it must be noted the only shortage which occurred in any of the depositories of the city occurred in the bank of which the treasurer of the city was the cashier. The further fact that he, when matters became so desperate they could not longer be hidden, committed suicide, supposedly on the theory "he who dies pays all debts." From the en-

tire record it is quite evident the business of the city was managed and done in a very careless, reckless, irregular, and unlawful manner. The commissioners of the city and the officials of the bank, of which the city treasurer was cashier, knew or must have known the careless manner in which the business of the city was being transacted, and that from the manner in which the business of the city with the banks as depositories was being conducted that disaster might come. The banks appointed by the commissioners of the city as depositories of the funds of the city deposited in them knew, in making payment of sums of money on orders drawn by the treasurer of the city alone, in utter disregard and direct violation of law and their duty, disaster could readily follow, as did the other officials of the city, as clerk and auditor, charged by the law with the duty of countersigning the vouchers drawn upon the accounts of the city with its depositories. In short, these are cases in which the entire city management of the plaintiff city, including its officials, its duly selected depositories under the law, and all others, excepting the defendants as sureties on the official bond of the treasurer of the city, must have and did know the reckless manner in which the business of the city was being transacted, and that the same was in open violation of those provisions of the law made for the protection of the city in its finances.

The question is: Must the surety on the bond of the city treasurer, although ignorant of the unlawful manner in which the business of the city was being conducted to its hurt, respond on the bond of an unfaithful official? And this question must be answered by the solution of the query: What obligation in law did the surety assume for which it was paid and to which it must respond?

Formerly, under the provisions of the statutes of the state, the treasurer of a city was a guarantor of the moneys and properties of the city coming into his hands as an official of the city. But in these later days the law-making power of the state in its wisdom has seen fit to substitute the legal liability of others to it for its funds, instead of the absolute guaranty of the treasurers of the cities and their bondsmen. Hence the statutes above quoted and referred to have been enacted to supplant former laws. Now, the question in these cases comes to this: If the city treasurer of the plaintiff city did steal the money which is charged as shortage in these cases, whose money did he steal? That of the city, or the money of the banks acting as depositories of city funds under the law?

That is to say, what relation under the law was created between the city and its selected depositories, on the making of the deposits by the city treasurer which were made in these cases? And did the bank become the owner of the money deposited in these cases, as in the case of an ordinary depositor in a bank on open account, or was the money deposited still the property of the city?

To my mind, the solution of this problem must determine the liability or nonliability of the defendants as sureties, and for this reason. If the money of the city on deposit in the designated depositories under the law remained the money of the city after it was deposited therein, beyond all question, if withdrawn unlawfully by the city treasurer, the defendants would be liable to the city under the terms of the obligations in controversy. But if, on deposit of the moneys of the city in a depository of the city, as selected under the law, the title to the money passed to the bank, and the city became a mere depositor in the bank on open account, in such case the city must look to the bank, or the surety on the bond of the bank, as by law required to be taken. It is stipulated by the parties to these actions that all the moneys involved in these actions was by the treasurer of the city deposited in a duly selected depository of the city, of which he was the cashier (except the sum of $65), and that these moneys so deposited were paid out by the depositories in a manner not authorized by the law. Now, the problem is: If the moneys so drawn out in an unauthorized manner were applied to any unlawful purpose, in whole or in part, whose the liability for the same, the depository so unlawfully paying out, or the surety on the bond of the treasurer, who placed the money in the bank of the city, where the law compelled him to place it?

Many middle Western states of our country, like this state, have by their statute law abrogated the absolute liability of the treasurers of their several municipalities, and substituted for the single liability of the official of a municipality on his official bond the liability of depositories selected as by the law ordained; and, undoubtedly, for the reason the protection afforded the municipalities of the state was thought to be thus made greater, and the municipality was, as in this case, allowed to collect and receive interest on funds so deposited.

A statute of the state of North Dakota, very similar to the statute law of this state, came under consideration of the Supreme Court of that state in Board of Education of City of Rugby v. Nelson, 33 N. D. 462, 157 N. W. 664. It was there held, quoting from In re State Treasurer's Settlement, 51 Neb. 116, 70 N. W. 532, 36 L. R. A. 746, as follows:

"If this money has been deposited in a depositary, the school district has, in the language of the opinion in Re State Treasurer's Settlement, 51 Neb. 116, 70 N. W. 532, 36 L. R. A. 746, in legal effect made 'a loan of such moneys to the bank, and the relation of debtor and creditor is thereby created, not between the bank and the treasurer, but between the former and the state (school district), since the money thus deposited belonged to the state (school district), and not to the treasurer, its agent and representative. A depositary bank being the state's (district's) debtor for all funds deposited therein in compliance with law, all sums so remaining on deposit at the close of (the treasurer's term) were not moneys in his hands in such a sense as he was bound at his peril in making a settlement with his successor.' * * * And prior to the passage of a depositary statute in Nebraska that state held the official to be the insurer of public moneys received by him. * * * But, as the foregoing illustrates, such liability was entirely changed by the enactment, in 1891 [Laws Neb. 1891, c. 50], of a statute similar to this [the North Dakota statute]. And of course the Legislature has plenary power to prescribe the liability of its officials for the funds of it or its municipalities. The state could not elect to loan its money, or that of its municipality, to a bank, as here done, under the depositary law, and compel the treasurer, as its representative, under criminal penalties to create such relationship, he having no voice in the selection of the depositary, and at the same time hold him as an insurer of the state's debtor, the bank. Such would constitute confiscation of the private property of the individual who happened to be a public officer charged to receive public moneys. The state has therefore chosen to depart from any absolute or limited theory of the officer as insurer, and has substituted therefor the liability of its depositary, assuming rather to take the risk of the latter than of the official as to ability to respond for public funds. * * * That the relation of debtor and creditor arose from the deposit with the bank, no matter how irregular the designation or without a designation, so long as the deposit was made upon the order of the board, there can be no doubt. The bank by accepting the money would be estopped to deny its liability to return it to the district in any event, and there can exist no valid ground upon which to

charge the treasurer with any responsibility for this loss. * * * Under section 1213 [Comp. Laws N. D., 1913] the treasurer has the control of the funds for the purposes of deposit, and until deposited, and even thereafter to the limited extent of checking them out in the name of the district by himself as treasurer upon warrant of the school board as his authority to disburse."

In Edgerton Independent Consolidated School District, etc., v. Volz, 50 S. D. 107, 208 N. W. 576, the Supreme Court of South Dakota, in commenting upon a statute quite similar to that of this state involved in this litigation, said:

"When treasurer of school district, pursuant to Laws 1921, c. 335, selected bank as depositary for funds of school district and made such deposits, relation of debtor and creditor arose, not between bank and treasurer, but between bank and school district. * * * Where treasurer of school district, acting in good faith, selected a depositary without requiring bond from bank, as permitted by Rev. Code 1919, § 9013, held that, in view of Laws 1921, c. 335, treasurer and surety on his bond are not liable to school district on failure of such bank; treasurer not being liable as an insurer of solvency of bank."

In Perley v. County of Muskegon, 32 Mich. 132, 20 Am. Rep. 637, it is said:

"The deposit which creates these contract relations must be either the money of the officer or of the public, but it cannot usually be that of both. If an officer is required or authorized by law to make deposits in any particular place or with any particular person, he is usually, if not universally, protected from any further responsibility, so long as he leaves it there, and is not a guarantor of the safety of the deposit."

The state of Montana has a depository law akin to that of this state. In the case of State ex rel. School District et al. v. McGraw, 74 Mont. 152, 240 P. 812, it is said:

"While the county treasurer is the custodian of the school district funds up to the time he makes the deposit, under the law as it now exists, when he complies with the above provisions [depositary act] and while the funds remain in the depository, he is not the custodian thereof, and the relationship of debtor and creditor arises between the school district having a credit with the county. * * * "

In Stephens v. City of Ludlow et. al., 159 Ky. 729, 169 S. W. 473, it is·held that:

"When * * * the selection of the depository is taken out of his [treasurer's] hands and he is directed by the city to keep its funds in an institution selected by it, the city and not the treasurer assumes responsibility for the integrity and solvency of the institution so selected."

See, also, Magee v. Brister, 109 Miss. 183, 68 So. 77; Hamilton County v. Aurora National Bank, 88 Neb. 280, 129 N. W. 267.

In Brandt on Suretyship, vol. 2 (3d Ed.) § 743, p. 1309, the rule is stated as follows:

"Where a statute provides for a depositary for state funds and that interest must be paid on such deposits, a deposit therein is a loan to the bank, and not moneys in treasurer's hands in such a sense as he was bound to produce them in making settlement to his successor."

In the case of Fidelity & Deposit Co. v. Wilkinson County, 109 Miss. 879, 69 So. 865, it is said:

"The relation that existed between the Citizens' Bank of Wilkinson County and the county of Wilkinson, in so far as the money secured by the bonds here in question is concerned after it had been deposited therein, was that of debtor and creditor, for the money deposited ceased thereafter to be the property of the county, and became that of the bank, which thereby simply became indebted to the county to the amount thereof. The money embezzled, therefore, was not the property of the county, but of the bank. What the sureties on the bank's bonds guaranteed was not the return to the county of the identical money deposited by it in the bank, but that the bank would pay the debt due by it to the county when called on so to do. Whether the money of the bank was embezzled, as well as its solvency vel non in 1912, are not material to the present inquiry."

In Bignell v. Cummins, 69 Mont. 294, 222 P. 797, 36 A. L. R. 634, the Supreme Court of Montana held:

"The funds placed in the State Bank of Ovando by the treasurer were deposited pursuant to section 4767, R. C. 1921, after the bank had been designated a depositary according to law, and had given a good and sufficient bond. The deposit was lawful, and by reason thereof the county was merely a general creditor of the bank."

In Board of Commissioners v. Citizens' Bank, 67 Minn. 240, 69 N. W. 913, it is held:

"But the relations of a bank to the county and to the funds deposited with it under the statute are entirely different [different than the rule where there is no depositary statute]. The relation between the bank and the county is that of debtor and creditor, the same as

between it and any other depositor. The money deposited does not remain the property of the county, but becomes the property of the bank, which it has the right to lend or use in any other way it sees fit. This right is implied from the fact, if from nothing else, that the bank is to pay interest on the money. When the bank pays out money on the check or draft of the county, it is using its own money, and not that of the county; in other words, it is merely paying its debt with its own funds. It is never in default until payment is demanded by the county and refused."

The situation in the case of Smith v. Chosen Freeholders of Essex County, 48 N. J. Eq. 627, 23 A. 268, was much as in the case at bar:

"It appeared by the bill that respondent, a public corporation, had made deposits of public money belonging to it in a bank; that such deposits were made in the name of the county collector as such, but, by respondent's directions, were withdrawn only by checks signed by the county collector for the time being, and countersigned by the auditor of the county; that a balance of deposits stood on the books of the bank, in the name of Joseph S. Smith, collector; but that Smith had ceased to be collector and had been succeeded by Regan. Upon demurrer to the bill, held that Smith had no control over or interest in such balance, but that respondent had an action at law to recover the same, if the bank refused to pay a check therefor signed by Regan as collector and countersigned by the then auditor, which action would afford a complete and adequate remedy to it."

There are many other adjudicated cases applicable in principle to the instant cases, all going to establish the proposition that when the moneys of the city, as in this case, had been deposited on collection by Cavanaugh, city treasurer, in the depositories duly selected by the city commissioners, as by law provided, the ordinary relation of debtor and creditor was established between the depository and the city, and for any neglect of duty occasioning loss to the city thereafter the depository was liable on its contract and on any bond given by the depository as by law required to be given. Now, in its discharge of its obligation as the depository of the city in this case to pay out the money due the city in but one manner, as by the law provided, and in no other way, could the bank discharge its liability to the city as a depositor.

■ Of course, so long as the money of the city was employed to discharge valid and due debts of the city in the irregular manner in which it was done in these cases, pro tanto, the bank as a depository would be protected because the act of the depository in making payment in an irregular manner, not authorized by the law would be simply damnum absque injuria, but in such a case the burden of making such proof would rest upon the depository. Now, it is true, in these cases, it is shown it was the treasurer of the city, Cavanaugh, who induced the city depositories to pay out its funds in a manner not authorized by the law and in a manner which did not entitle the bank as a depository to charge it against the account of the city in the bank. But, as has been seen, the money so paid out was the property of the bank and not the money or property of the city, and, if lost, it was the loss of the bank, and not the loss of the city, covered by the indemnity bonds involved in these transactions.

■ It may be said in these cases, in passing, the defendant surety companies had the right, before executing the obligations involved in these actions, to examine the statutory law with relation to the duties by law imposed upon all parties concerned with the obligations, and to thus determine the extent of the liability it was assuming, and also the duties the other parties concerned were under to observe and follow the law. If the depositories or depository, as the case may be, of the city's moneys duly deposited therein are not financially able to respond under the law, and this arises out of the failure of the city commissioners to take the obligations by the law required by them to be taken from such depositories, then the loss must fall upon those who by their neglect caused the same. For such loss defendants in these cases are not liable. It would not do to permit the officials of the city to conduct the affairs of the city in such a reckless and careless manner as the record discloses in these cases, and then recover from a surety on the bonds of a treasurer of the city, who informed itself of the liability imposed on the treasurer and others in the making of the bond before entering into the contract. Such misconduct of the city officials and the depositories of the city could and would ruin any surety on official bonds without power to protect themselves.

It follows, under the law, the exceptions to the report of the referee, both as to the facts and the law, must be overruled as a matter of law, and the same are therefore here and now adopted and approved by the court. There will be judgment in each case as is recommended in the report.

It is so ordered.